NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**29192**
**19-MAR-2012**
**08:04 AM**

NO. 29192

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CHRISTOPHER J. YUEN, PLANNING DIRECTOR, COUNTY OF HAWAIʻI,
Appellant-Appellee,
v.
BOARD OF APPEALS OF THE COUNTY OF HAWAIʻI,
VALTA COOK, in his capacity as Chairperson of the
BOARD OF APPEALS OF THE COUNTY OF HAWAIʻI, Appellee,
and
EDMUND JIN and EVA Y. LU,
Appellees-Appellants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-261K)


MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

This secondary appeal arises from the decision of
Appellant-Appellee Christopher Yuen, County of Hawaiʻi Planning
Director (Director) denying Appellees-Appellants Edmund Jin and
Eva Y. Lu's (Jin and Lu) application for a water variance in
order to subdivide property they own. After the Director denied
Jin and Lu's water variance application, they petitioned for
review by the Board of Appeals of the County of Hawaiʻi (Board).
The Board ruled in favor of Jin and Lu, approving the variance.
The Director appealed to the Circuit Court for the Third Circuit

(circuit court).[1] The circuit court, in turn, reversed the Board, denied the water variance, and entered judgment in favor of the Director. Jin and Lu filed a timely notice of appeal to this court.

In their points of error raised in this appeal, Jin and Lu contend the circuit court erred by: (1) denying their motion to dismiss for lack of jurisdiction, because the Director's notice of appeal to the circuit court was untimely; (2) concluding that Rule 22-4 of the County of Hawai'i Planning Department's Rules of Practice and Procedure (Planning Department Rules) was valid and enforceable; and (3) holding that the subject property did not receive sixty inches of annual rainfall and that Jin and Lu failed in their burden of proof and persuasion before the Board.

I.    BACKGROUND

Jin and Lu are owners of a 35.9 acre lot located in South Kona, County of Hawai'i. Jin and Lu want to create a six-lot subdivision and, because the property is outside the service limits of the County's water system, a variance is required from Section 23-84 of the Hawai'i County Code, part of the Subdivision Code, which sets out water supply requirements for a subdivision. Section 23-84 requires:

> Section 23-84.  Water supply.
>     A subdivision to be laid out after December 21, 1996 shall be provided with water as follows:
> (1)    A water system meeting the minimum requirements of the County department of water supply; and
> (2)    Water mains and fire hydrants installed to and within the subdivision in accordance with the rules and regulations of the department of water supply, adopted in conformity with article VIII of the Charter.

Hawai'i County Code (HCC) § 23-84 (2005 Edition, as amended).

---

[1]  The Honorable Ronald Ibarra presided.

In order to obtain a variance, Section 23-15 of the County Code states:

> **Section 23-15. Grounds for variances.**
> No variance will be granted unless it is found that:
> (a) There are special or unusual circumstances applying to the subject real property which exist either to a degree which deprives the owner or applicant of substantial property rights that would otherwise be available or to a degree which obviously interferes with the best use or manner of development of that property; and
> (b) There are no other reasonable alternatives that would resolve the difficulty; and
> (c) The variance will be consistent with the general purpose of the district, the intent and purpose of this chapter, and the County general plan and will not be materially detrimental to the public welfare or cause substantial, adverse impact to an area's character or to adjoining properties.

HCC § 23-15.

Rule 22 of the Planning Department Rules, entitled "Water Variance," provides the "criteria for the granting or denial of variances from sec. 23-84 of the Subdivision Code" and "applies to requests for subdivisions that propose to rely on rain catchment for their water supply, on agriculturally-zoned property." Planning Department Rules, Rule 22-1. More specifically and the focus of this case, Rule 22-4 entitled "Minimum rainfall" provides:

> [A]ll lots to be served by catchment shall have an average annual rainfall of not less than 60". The annual rainfall can be proven by rainfall records at comparable rain gauges, or by the USGS rainfall map.

Jin and Lu propose that water for a subdivision on their property be supplied by private water catchment systems. To this end, Jin and Lu submitted an "Application for Variance from Subdivision Code" on December 21, 2006 to the County of Hawai'i Planning Department (Planning Department). Jin and Lu's application for variance stated, in part:

3

> The Property runs from Mamalahoa Highway up to approximately 1,760 feet in elevation and receives approximately 60+ inches of rainfall annually and therefore qualifies for a water variance under the Planning Department's new Rule 22. As shown on the enclosed GIS map, the 60" rainfall line apparently utilized by the Planning Department in reviewing variance applications runs less than 50 feet mauka of the property boundary. **Exhibit 5.** The attached photographs depict the nature and extent of vegetation present on the property, demonstrating that it receives more than adequate rainfall to support private residential catchment water systems . . . . Given the proximity of the 60-inch isohyet line to the owners' Property, and because the location of the isohyet line is only an approximation of rainfall patterns intended to assist in large scale hydrogeological resource assessment, it is reasonable to infer that the property receives sufficient rainfall annually to allow effective use of private residential catchment systems.[2]

On February 12, 2007, the Director issued a letter denying Jin and Lu's request for a variance. The letter explained, in part, that the proposed catchment systems "would not meet the intent and purpose of the Subdivision Code" and were "not allowed pursuant to Planning Department Rule 22-Water Variance, effective February 25, 2006." The letter further stated that the "proposed 6-lot subdivision does not receive minimum 60" annual rainfall and the applicant's request to allow individual rainwater catchment systems for potable and emergency [needs] is not allowed or eligible pursuant to Rule 22-Water Variance which requires the proposed subdivision to receive minimum 60" annual rainfall."

On March 14, 2007, Jin and Lu petitioned the Board for review of the Planning Department's decision. <u>See</u> Hawai'i County Charter, Section 6-4.2(h). After a contested case hearing, the Board issued its "Findings of Fact, Conclusions of Law, and

---

[2] Isohyet is defined in the Merriam-Webster's Collegiate Dictionary as "a line on a map or chart connecting areas of equal rainfall." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 664 (11th ed. 2003). In this case, a map in the record shows an isohyet line, to the ocean-side (makai) of which there is annual rainfall of not more than sixty inches and to the mountain-side (mauka) of which there is at least sixty inches and up to eighty inches of rainfall.

4

Decision and Order Approving Variance Application" (Board Decision) dated October 18, 2007. The Board Decision concluded that:

> (a) the Denial by the Planning Director was arbitrary and capricious in that he failed to consider other evidence regarding the amount of rainfall;
>
> (b) the Planning Director's reliance on only the isohyet line and one rain gauge was arbitrary in that Rule 22 contemplates that there would be reliance on more than one rain gauge, and that the isohyet line was within a reasonable distance from Appellant's property.

The Board's conclusion of law (COL) 6 stated that "[t]he Planning Director's interpretation and application of Rule 22 in the context of this Application represented an unwarranted exercise of discretion and/or an abuse of discretion."

The Director subsequently appealed the Board's Decision to the circuit court. On January 2, 2008, Jin and Lu filed a motion to dismiss the Director's appeal to the circuit court on the grounds that the Director's notice of appeal was not timely filed. Although the notice of appeal had been received by the clerk of the circuit court on November 19, 2007, it was not file-stamped until November 23, 2007. The circuit court denied the motion to dismiss, stating that "the court is exercising its administrative power to correct the record and finds that the Notice of Appeal was timely filed."

On April 14, 2008, the circuit court issued its "Findings of Fact, Conclusions of Law and Decision and Order Reversing the Board of Appeals' Decision and Order dated October 18, 2007" (Circuit Court Decision). In the Circuit Court Decision, it made the following COL's:

> 13.  Based on the foregoing, Rule 22-4 is valid and enforceable and the Director did not depart from Rule 22-4 in contravention of the rule-making procedures of Chapter 91, HRS, by using methods of measuring rainfall other than what is provided for in Rule 22-4.
>
>      . . .

5

15. The Board's conclusion that "[t]he Planning Director's interpretation and application of Rule 22 in the context of this Application represented an unwarranted exercise of discretion and/or an abuse of discretion" was clearly erroneous in view of the reliable, probative, and substantive evidence on the whole record.

16. The Board's Decision and Order was affected by an error of law and in violation of the statutory provision contained in HRS § 91-10 in that the Board unlawfully shifted the burden of proof to the Director when it rendered its Decision and Order.

Jin and Lu filed a timely appeal to this court.

## II. STANDARDS OF REVIEW

### A. Jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Captain Andy's Sailing, Inc., v. Dep't of Land & Natural Res., 113 Hawai'i 184, 192, 150 P.3d 833, 841 (2006) (internal quotation marks and citation omitted).

### B. Secondary Appeals

In this secondary appeal, reviewing the Circuit Court Decision which reviewed the Board Decision, we "must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [(1993)] to the agency's decision." Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting Konno v. Cnty. of Hawai'i, 85 Hawai'i 61, 77, 937 P.2d 397, 413 (1997)). Hawaii Revised Statutes (HRS) § 91-14(g) (1993) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedure; or

6

(4)     Affected by other error of law; or
(5)     Clearly erroneous in view of the reliable,
        probative, and substantial evidence on the whole
        record; or
(6)     Arbitrary, or capricious, or characterized by
        abuse of discretion or clearly unwarranted
        exercise of discretion.

"Under HRS § 91-14(g), [the agency's] conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." Korean Buddhist Temple, 87 Hawai'i at 229, 953 P.2d at 1327 (quoting Konno, 85 Hawai'i at 77, 937 P.2d at 413).

"[An] agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." Korean Buddhist Temple, 87 Hawai'i at 229, 953 P.2d at 1327 (citation omitted).

## III. DISCUSSION

### A.     The Circuit Court Had Jurisdiction to Hear the Agency Appeal

Jin and Lu contend that the circuit court did not have jurisdiction and should have dismissed the Director's appeal to that court because the Director's notice of appeal was file-stamped on November 23, 2007, beyond the requisite appeal period under HRS § 91-14.

HRS § 91-14(b) provides in relevant part that "proceedings for review shall be instituted in the circuit court . . . within thirty days after service of the certified copy of the final decision and order of the agency pursuant to rule of court . . . ." The Board Decision was mailed on October 19, 2007. Pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule

7

6(e),[3] because the Board Decision was served by mail, the Director had an additional two days to file the notice of appeal. Thus, the time for filing the notice of appeal expired on November 20, 2007.

The Director's notice of appeal was submitted to the clerk of the circuit court on November 19, 2007, prior to the appeal deadline, and a stamp on the document indicates it was received by the circuit court's legal documents branch on that date. However, the notice of appeal was not file-stamped by the circuit court clerk until November 23, 2007.

The Hawai'i Supreme Court has held that submission of a document to a circuit court clerk and the clerk's acceptance and date stamping of it as "received" constitutes a filing sufficient to satisfy jurisdictional requirements. See Doe v. Doe, 98 Hawai'i 144, 151, 44 P.3d 1085, 1092 (2002) (holding that the family court had jurisdiction regarding a motion for new trial and reconsideration based on the date that the clerk accepted and date stamped the document as "received").

Here, the notice of appeal was received by the clerk of the circuit court on November 19, 2007. Although the notice was not file-stamped until November 23, 2007, the appeal was timely because the date the circuit court clerk accepted the notice of appeal and stamped it as received, November 19, 2007, constitutes filing sufficient for jurisdictional purposes. Id. The circuit court properly exercised jurisdiction over the Director's appeal.

---

[3]     HRCP Rule 6(e) (2000) provides:

> **(e) Additional time after service by mail.** Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 2 days shall be added to the prescribed period.

B.     **The Circuit Court Was Right in Concluding that Rule 22-4 is Valid and Enforceable**

Jin and Lu make two arguments in asserting that Rule 22-4 is invalid or unenforceable.  First, they argue that "Rule 22-4 is invalid or unenforceable because County planners changed the standards to approve a water variance in violation of Chapter 91, HRS" by considering information *beyond* the "rainfall records at comparable rain gauges" or "the USGS rainfall map" specified in the rule.  They also contend, however, that Rule 22-4 is "unenforceable because a single rainfall measurement and isohyet line are inadequate to provide reliable and valid rainfall data under acceptable hydrological standards."  In other words, Jin and Lu's second argument is that the information relied upon by the Planning Department was *insufficient* to deny their requested variance.

Based on these arguments, Jin and Lu assert that the circuit court erred by entering its COL 13 and COL 15, which state:

13.     Based on the foregoing, Rule 22-4 is valid and enforceable and the Director did not depart from Rule 22-4 in contravention of the rule-making procedures of Chapter 91, HRS, by using methods of measuring rainfall other than what is provided for in Rule 22-4.

.  .  .

15.     The Board's conclusion that "[t]he Planning Director's interpretation and application of Rule 22 in the context of this Application represented an unwarranted exercise of discretion and/or an abuse of discretion" was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

(1)     **The Planning Department did not change the standards under Rule 22-4**

In asserting that the Planning Department deviated from Rule 22-4, Jin and Lu point to testimony by Daryn Arai (Arai), an employee of the Planning Department, that: (1) only a single rain gauge, the Opihihale rain gauge, was used to measure rainfall

9

averages when the rule called for comparable rain gauges (*i.e.* multiple gauges), (2) no USGS rainfall map was used, (3) the isohyet line dividing the two rainfall areas was relied upon by the Planning Department to make its decision even though isohyet lines are not mentioned in Rule 22, and (4) the Planning Department considered long term rainfall records in making its decision, even though they were not mentioned in Rule 22.

Arai's testimony does not show deviation from Rule 22-4. According to the plain language of Rule 22,[4] an applicant for a water variance is not *limited* to proving annual rainfall by rain gauges or the USGS rainfall map. Rather, under Rule 22-4, the requirement of an average annual rainfall of not less than 60 inches "<u>can</u> be proven by rainfall records at comparable rain gauges, or by the USGS rainfall map." (Emphasis added). This language does not foreclose other sources of proof. Rule 22-14 does not provide that annual rainfall can *only* be proven by the two referenced methods. The circuit court properly held that Rule 22 does not prohibit other methods of showing the rainfall requirement.

Moreover, the Board appeared to reach the same conclusion when it stated that the Director wrongfully "failed to consider other evidence regarding the amount of rainfall[.]" The Board's Decision contains no FOF or COL that support Jin and Lu's contention that the Planning Department made "informal changes" to Rule 22-4 by considering evidence other than the two methods mentioned in Rule 22. Hence, neither the Board nor the Circuit Court read Rule 22-4 as limiting the evidence to prove the sixty inch annual rainfall requirement.

_____

[4] "Where the statutory language is plain and unambiguous, the court's sole duty is to give effect to its plain and obvious meaning." <u>Unite Here! Local 5 v. City & Cnty. of Honolulu</u>, 123 Hawai'i 150, 177, 231 P.3d 423, 450 (2010) (citations and brackets omitted).

10

### (2) Rule 22-4 was not unenforceable

Regarding Jin and Lu's argument that a single rainfall gauge and the isohyet line are inadequate to provide reliable and valid rainfall data, and hence Rule 22-4 is unenforceable, they confuse the applicable burden of proof in this case. Pursuant to HRS § 91-10(5) (Supp. 2003), Jin and Lu had the burden to establish that the sixty inch rainfall requirement under Rule 22-4 was met. In the contested case before the Board, the Planning Department did not need to disprove compliance with Rule 22-4. Therefore, Jin and Lu's argument about the single rainfall gauge and reliance on the isohyet line is without merit.

### C. The Circuit Court Was Right That Jin and Lu Failed to Meet Their Burden of Proof and Persuasion That There Is An Average Annual Rainfall of Not Less Than Sixty Inches

Jin and Lu challenge the circuit court's COL 4 to the extent that it states:

> 4.   There is no evidence in the record that Jin and Lu's property receives an average annual rainfall of not less than sixty inches as required by Rule 22.

They also challenge the circuit court's COL 6, which states:

> 6.   Based on the foregoing, Jin and Lu failed to meet their burden of proof, including the burden of producing evidence as well as the burden of persuasion pursuant to HRS § 91-10(5), to affirmatively show that the Director's decision was arbitrary, capricious, an abuse of discretion, and/or violated law.

It is apparent from the Board's Decision that it incorrectly placed the burden of proof on the Director, rather than Jin and Lu. The Board's Decision stated that:

> a. the Denial by the Planning Director was arbitrary and capricious in that he failed to consider other evidence regarding the amount of rainfall;

> b. the Planning Director's reliance on only the isohyet line and one rain gauge was arbitrary in that Rule 22 contemplates that there would be reliance on more than one rain gauge, and that the isohyet line was within a reasonable distance from Appellant's property.

11

The Board did not make any finding as to whether Jin and Lu had met their burden of proof, but rather, it improperly focused on the Director's basis for the denial.

Given the circuit court's ruling that they had the burden of proof, Jin and Lu argue that there was credible and sufficient circumstantial evidence produced at the hearing before the Board that their property receives not less than sixty inches of rainfall annually. They point to evidence that the isohyet line (the point from which there was annual rainfall of between 60-80 inches annually) was only about 100 feet above (to the mountain side or mauka of) the top portion of their property. They then point to Arai's testimony that, with respect to using data from the Opihihale rain gauge, a 500 foot difference in elevation would not substantially alter rainfall levels. Based on this evidence, and also in challenging the reliability of the isohyet lines, Jin and Lu summarize their argument as follows:

> 1. Since the isohyet line was only about 100 feet mauka of the subject property, and a 500 feet difference in elevation would not substantially alter rainfall levels, the 60-80 inches of rainfall represented by the isohyet line presumably could extend makai or west over the entire length of the subject property since the entire makai-mauka elevation of the subject property differs by only 472 feet or thereabouts (1,278 feet to 1,750 feet elevation).

> 2. This would also mean that instead of simply receiving 50 but no more than 60 inches of rainfall, the subject property could receive more than 60 to 80 inches annually. And this is consistent with Stephen Bowles' testimony that isohyet lines represent only a general area of rainfall, and that the isohyet line is inaccurate, and that reliance on a map is arbitrary and capricious.

(Emphasis added).

Jin and Lu's arguments fail to show affirmative proof to meet their burden. The top portion of the property being about 100 feet from the isohyet line does not establish the required sixty inches of annual rainfall on the subject property. It is undisputed that the entire subject property is below (makai of) the isohyet line. To obtain the variance allowing rainfall

12

catchment systems, "all lots" served by catchment must receive a minimum of sixty inches of rainfall annually. See Section 23-84 Subdivision Code; Rule 22-4.

While Jin and Lu attack the methods and information relied upon by the Director, they can point to no evidence in the record that affirmatively shows that the subject property receives the requisite annual rainfall. As noted by the circuit court, Jin and Lu's own expert witness testified that he does not know whether the subject property receives an average annual rainfall of not less than sixty inches and that he did not conduct a study to determine if there would be adequate rainfall for catchment.

The circuit court was therefore correct in its COL 4 and COL 6 that there was no evidence the property receives the annual rainfall required under Rule 22-4 and that Jin and Lu failed to meet their burden of proof.

Ultimately, because the Board failed to apply the proper burden of proof, the Board Decision was in violation of the statutory requirement that "the party initiating the proceeding shall have the burden of proof[.]" HRS § 91-10(5). The Board Decision was also clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. See HRS § 91-14(g). Therefore, the Circuit Court Decision was correct in reversing the Board Decision.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's judgment entered on May 2, 2008.

DATED:  Honolulu, Hawai'i, March 19, 2012.

On the briefs:

Stuart H. Oda
for Appellees-Appellants

Amy G. Self
Katherine A. Garson
Deputies Corporation Counsel
for Appellant-Appellee

Chief Judge

Associate Judge

Associate Judge

14